1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11

DONA BROWN, et al.,

| | |
|---|---|
| | ) Case No. CV 16-642 DMG (AGRx) |

12

Plaintiffs,

**ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [43]**

13

v.

14

WELLS FARGO BANK, N.A., et al.,

15

Defendants.

16
17
18
19

This matter is before the Court on a motion for summary judgment ("MSJ") filed by Defendant Wells Fargo Bank, N.A. [Doc. # 43.] The Court held a hearing on this motion on January 12, 2018. For the reasons set forth below, the Court **DENIES** Defendant's MSJ.

20
21
22
23

## I.

24

## PROCEDURAL BACKGROUND

25

On May 12, 2016, Plaintiffs Dona Brown and Timothy Brown filed their First Amended Complaint, which is the operative pleading in this action. [Doc. # 16.] The First Amended Complaint explicitly asserts only two causes of action: (1) breach of

26
27
28

-1-

contract, and (2) wrongful foreclosure.  *See* First Am. Compl. at 1, 20–31.[1]  Upon Defendant's motion, the Court dismissed those two causes of action with prejudice, but concluded that the First Amended Complaint survived "[t]o the extent [it] alleges facts supporting a claim for violation of [California Civil Code] section 2924c[.]"  [Doc. # 24].  On December 14, 2016, Defendant filed an Answer to the First Amended Complaint.  [Doc. # 25].

On December 8, 2017, Defendant filed the instant MSJ.  [Doc. # 43.]  The MSJ has since been fully briefed.  [Doc. ## 49, 59.]

## II.

## FACTUAL BACKGROUND

### A.   Evidentiary Objections

Both sides have filed evidentiary objections.  [Doc. ## 54, 55, 61.]  Because several of the objections pertain to evidence that the Court need not consider to decide the MSJ, the Court declines to rule on them.  The Court addresses the remaining objections as necessary in its discussion below.

### B.   Uncontroverted Facts[2]

In September of 2007, Plaintiffs obtained a home loan from World Savings Bank, FSB for $477,600, which was secured by a deed of trust recorded against real property located at 23829 Laurelwood Lane, Valencia, California.  Pls.' Genuine Disps. of Mat. Facts at ¶¶ 1–2 [Doc. # 53].  Defendant later became the successor to World Savings Bank, FSB.  *See* McNeal at ¶¶ 1–2 [Doc. # 43-1].

On October 27, 2011, Defendant caused a notice of default to be recorded that reflected loan arrears through October 26, 2011 of $12,883.81.  Pls.' Genuine Disps. of Mat. Facts at ¶ 3 [Doc. # 53].  On January 30, 2012, Defendant recorded a notice of

---

[1] With the exception of citations to deposition testimony, all page references herein are to page numbers inserted in the header of the document at the time of filing in the CM/ECF filing system.

[2] Unless otherwise indicated, the facts recited in this section are uncontroverted.

trustee's sale that scheduled a sale date of February 21, 2012.[3]  *See id.* at ¶ 4.   On January 30, 2012, the total outstanding debt owed on the loan was $501,785.96.  *Id.* at ¶ 14.   At Plaintiffs' request, Andrew Fowler, a representative of Trustee Cal-Western Reconveyance Corporation, provided them with a reinstatement quote for the property on February 3, 2012, *id.* at ¶ 17, which was effective until February 16, 2012.  *See* D. Brown Decl., Ex. D [Doc. # 48-4].

The instant dispute concerns a series of four telephone calls that Plaintiff Dona Brown allegedly had with Defendant's representatives on February 4, 2012, February 6, 2012, February 16, 2012, and May 15, 2012.[4]  *See* MSJ at 21–22; Opp'n at 15–17.  The parties hotly dispute the substance of those calls.  Defendant denies that it ever prevented Plaintiffs from reinstating their loan.  Plaintiffs, on the other hand, claim that during the February 4, 2012 telephone call, Dona Brown attempted to reinstate the loan through a wire transfer, but an employee of Defendant named Kristopher Peterson refused to give Dona instructions to wire the funds because he insisted that the amount of the reinstatement quote from Cal-Western was inaccurate.  *See* D. Brown Decl. at ¶ 25 [Doc. # 48]; Knox Decl. at ¶ 4 (declaration from Dona's mother, who attests that she overheard

---

[3] Plaintiff Dona Brown attests that on January 30, 2012, she received a notice of trustee's sale from Trustee Cal-Western Reconveyance Corporation that had a sale date of February 21, 2012, but was not recorded and was not signed by the trustee.  *See* D. Brown Decl. at ¶ 18 [Doc. # 48].  Nonetheless, Plaintiffs do not dispute that a notice of trustee's sale with a February 21, 2012 sale date was recorded on January 30, 2012.  *See* Pls.' Genuine Disps. of Mat. Facts at ¶ 4 [Doc. # 53].

[4] Defendant's summary judgment motion proceeds on the assumption that Plaintiffs allege that the fourth call occurred on March 15, 2012.  *See* MSJ at 21–22 (citing First Am. Compl. at ¶ 61) ("Finally, Ms. Brown had another call with Mr. Larsen on March 15, 2012, in which she repeated her desire to reinstate the loan, but Mr. Larsen allegedly informed her that the trustee's sale could 'occur at any moment,' and that if the short sale was not completed Wells Fargo could not guarantee that the foreclosure would not go forward.").  This is because Plaintiffs issued a notice of errata in which they stated that this telephone call occurred on March 15, 2012.  *See* Notice of Errata at 1–2 (citing First Am. Compl. at ¶ 61) [Doc. # 40].  Nonetheless, Plaintiff Dona Brown's declaration submitted in opposition to the summary judgment motion claims that this call transpired on May 15, 2012.  *See* D. Brown Decl. at ¶ 33 [Doc. # 48].  Based on the current record, it is unclear to the Court what is the accurate date of this alleged telephone call.

this telephone call) [Doc. # 51].[5]  They also claim that Peterson stated during this call that Dona could not reinstate the loan using her mother's bank account because she was "once removed[,]" *see* D. Brown Decl. at ¶ 25 [Doc. # 48];[6] Knox Decl. at ¶ 4 [Doc. 51], and that he said that the only way that she could stop the foreclosure was by modifying her loan or short selling the property.  D. Brown Decl. at ¶ 25 [Doc. # 48].

Plaintiffs contend that during the February 6, 2012 call, Dona "begged" Peterson to allow her to reinstate her loan, but that Peterson replied that she could not do so because Defendant was already considering her request for a loan modification.  *See id.* at ¶ 27.  They further claim that Peterson told Dona that "things had 'gone too far' to reinstate" such that there were only two options:  the property needed to be sold, or the loan needed to be modified.  *See id.*  That same day, Plaintiffs entered into a residential listing agreement with a real estate agent in order to list their property for sale.  *See* Pls.' Genuine Disps. of Mat. Facts at ¶ 5 [Doc. # 53].

Prior to the February 16, 2012 telephone call, Plaintiffs received a letter from Craig Larsen, an employee of Defendant who was assigned to Plaintiffs as their "home preservation specialist[.]"  D. Brown Decl. at ¶ 30 [Doc. # 48]; D. Brown Decl., Ex. O [Doc. # 48-15].  With respect to Dona's and her mother's February 16, 2012 call with Larsen, Plaintiffs allege that when Dona's mother suggested that she could give Dona the money to reinstate the loan, Larsen responded that the mother could not do that because

---

[5] Defendant objects to this aspect of Donna Knox's declaration on the ground that it constitutes inadmissible hearsay.  Def.'s Objs. at 5 [Doc. # 61].  The Court **OVERRULES** this baseless objection because Plaintiffs are obviously not offering Peterson's statement for its truth—*i.e.*, to show that the reinstatement quote was inaccurate.  *See* Fed. R. Evid. 801(c) (defining hearsay as a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement").

[6] Dona Brown actually attests that Peterson told her that she could not use her mother's bank account to reinstate the loan because her mother was *not* "once removed."  *See* D. Brown Decl. at ¶ 25 [Doc. # 48].  Nonetheless, this appears to be a typographical error.  *See* Opp'n at 15 (asserting that Peterson told Dona that her mother was "once removed"); Knox Decl. at ¶ 4 (same) [Doc. # 51].

-4-

1    she had to "disclose where the money comes from."  *See* D. Brown Decl. at ¶ 31 [Doc. #
2    48]; Knox Decl. at ¶ 5 [Doc. # 51].[7]

3         In connection with the May 15, 2012 telephone call, Plaintiffs contend that Dona
4    called Larsen and "pleaded with him to let [her] reinstate the [loan] to save [her] home."
5    D. Brown Decl. at ¶ 33 [Doc. # 48].  They claim that Larsen responded that the sale could
6    occur at any moment and that if Plaintiffs lost the short sale buyers, he could not
7    guarantee that Defendant would not foreclose on the property.  *Id.*  Plaintiffs further
8    contend that Larsen told Dona that to reinstate her loan, she would be required to obtain
9    another reinstatement quote "really quickly and pay it quickly[,] and that the sale might
10   occur without [notice] while [she] was attempting this."  *Id.*[8]  Plaintiffs claim that at
11   around this time, they abandoned their attempts to reinstate the loan.  *See id.* at ¶ 34.

12        Plaintiffs also claim that prior to the telephone calls at issue, Defendant rejected
13   their attempt to reinstate the loan.  *See id.* at ¶¶ 11–15 (describing Dona's alleged
14   communications with Bridget Kasik).  Defendant vigorously disputes Plaintiffs'
15   assertions in this regard, *see* Def.'s Resp. to Pls.' Disps. of Mat. Facts at ¶¶ 32, 34, 36–37
16   [Doc. # 60], which Plaintiffs failed to raise in their First Amended Complaint.  *See* First
17   Am. Compl. at 1–32.  To the extent Plaintiffs seek to base liability upon conduct that
18   occurred prior to the facts asserted in the First Amended Complaint, they shall not be
19   permitted to do so, because Defendant was not given fair notice of these allegations.

20

21

22        [7] Defendant objects to this aspect of Knox's declaration on the grounds of hearsay, lack of
23   foundation, lack of personal knowledge, and lack of competency.  *See* Def.'s Objs. at 5 [Doc. # 61].  The
     Court **OVERRULES** these objections because Plaintiffs are undoubtedly not offering Larsen's
24   statement to show that Dona in fact had to disclose the source of the money, *see* Fed. R. Evid. 801(c),
     and Knox has personal knowledge of statements *she heard* Larsen make during the telephone call.  *See*
25   Fed. R. Evid. 601–02.

26        [8] Defendant complains that in their responses to its special interrogatories, Plaintiffs failed to
27   provide any facts to support their allegations relating to this telephone call.  *See* MSJ at 25–26.
     Nonetheless, Defendant does not object to the portion of Plaintiff Dona Brown's declaration that
28   describes this call.  *See* Def.'s Objs. at 2–4 [Doc. # 61].

Nonetheless, these assertions are relevant insofar as they may bear upon whether Plaintiffs' version of events is credible.[9]

On May 21, 2012, Plaintiffs signed a short sale affidavit pertaining to a real estate purchase contract for the property. *See* Pls.' Genuine Disps. of Mat. Facts at ¶ 6 [Doc. # 53]. On June 19, 2012, Plaintiffs approved the terms of a proposed short sale of the property. *Id.* at ¶ 7. On June 27, 2012, the short sale process was completed and the property was sold to a third party. *Id.* at ¶ 8. Defendant agreed to accept $360,708 of the proceeds of the sale in full satisfaction of Plaintiffs' mortgage obligation, *see id.* at ¶¶ 15–16, and Plaintiffs received $3,000 in relocation assistance from the proceeds of the sale. *See id.* at ¶ 9.

## III.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers

---

[9] Although Plaintiffs contend that Dona filed a complaint with the Office of the Comptroller of the Currency alleging that Defendant had, *inter alia*, not allowed Plaintiffs to reinstate their loan, *see* D. Brown Decl. at ¶ 11 [Doc. # 48], they did not include a copy of that complaint in the record. The Court notes that Plaintiffs are obligated to supplement their discovery disclosures and that failure to do so may result in the exclusion of that evidence at trial. *See* Fed. R. Civ. P. 26(e) and 37(c).

to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

## IV.

## DISCUSSION

To the extent relevant to the disposition of the motion, the Court addresses each of Defendant's arguments in turn.

**A.    Whether Plaintiffs May Assert a Legal Theory That Was Not Identified in Their First Amended Complaint**

As noted *supra* Part I, the Court concluded that Plaintiffs' claim under California Civil Code section 2924c survived Defendant's motion to dismiss the First Amended Complaint. California Civil Code section 2924c(e) provides in pertinent part:

> Reinstatement of a monetary default under the terms of an obligation secured by a deed of trust, or mortgage may be made at any time within the period commencing with the date of recordation of the notice of default until five business days prior to the date of sale set forth in the initial recorded notice of sale.

Plaintiffs asserted for the first time in their opposition to the MSJ that Defendant's alleged violations of California Civil Code section 2924c give rise to liability under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"). *See* Opp'n 18–22. Indeed, the UCL affords relief for violations of other laws even if they do not create private rights of action on their own. *See Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).

-7-

Defendant claims that Plaintiffs may not raise this UCL claim because it was not asserted in their First Amended Complaint. *See* Reply at 6–9. The Court rejects this argument because Plaintiffs' UCL claim is premised on the same alleged violations of section 2924c that the Court concluded had survived Defendant's motion to dismiss. Since the Federal Rules merely require Plaintiffs to allege the facts underlying their claims for relief and do not require them to identify any precise legal theory, their failure to discuss the UCL in the First Amended Complaint does not bar them from relying upon that theory now, to the extent it is based upon the same facts asserted in the pleading. *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (emphasis in original) ("Notice pleading requires the plaintiff to set forth in his complaint *claims for relief*, not causes of action, statutes or legal theories.").

Defendant also contends that it will be "severely prejudic[ed]" by Plaintiffs' new legal theory because "[a] UCL [c]laim relies on different elements and provides for very specific types of relief[,]" and Defendant would have conducted "additional discovery" to defend against such a claim. *See* Reply at 8. Defendant does not specify, however, what additional discovery it would have undertaken had it known of Plaintiffs' precise legal theory, *see id.*, and it is not apparent that any more fact discovery is necessary because Plaintiffs' UCL claim is predicated on the same alleged violation of section 2924c that Defendant identifies in its MSJ. *See* Opp'n at 18–22; MSJ at 21–22. Therefore, the Court will allow Plaintiffs to pursue a claim under the UCL.

The Court need not address certain arguments that would have been relevant only if Plaintiffs were asserting a standalone section 2924c claim—*i.e.*, (1) the absence of a private right of action under that statute, (2) the claim is barred by the three-year statute of limitations imposed by California Code of Civil Procedure section 338, and (3) Plaintiffs fail to produce evidence showing that they are entitled to damages. *See* MSJ at 13–19, 26–33; *see also* Cal. Bus. & Prof. Code § 17208 (imposing a four-year statute of limitations for UCL claims); *Mass. Mut. Life Ins. Co. v. Superior Court of San*

-8-

*Diego Cty.*, 97 Cal. App. 4th 1282, 1288 (2002) ("The UCL does not provide for the recovery of damages or attorney fees.").

**B.    Whether Plaintiffs Lack Standing to Raise a UCL Claim and/or Are Not Entitled to Remedies Under the UCL**

To possess standing to raise a UCL claim, Plaintiffs must show that they "lost money or property as a result of the unfair competition." *See Kwikset Corp. v. Superior Court of Orange Cty.*, 51 Cal. 4th 310, 321 (2011) (emphasis added) (quoting Cal. Bus. & Prof. Code § 17024). Defendant contends that Plaintiffs lack standing to raise their UCL claim because the loss of their down payment and the costs of improvements to the property was not caused by Defendant's conduct, given that Defendant had no control over the price Plaintiffs paid for the property or its market value at the time of the short sale. *See* Reply at 9–10; *see also* D. Brown Decl. at ¶ 2 (attesting that Plaintiffs paid $119,400 as an equity down payment, and that "[o]ver the years that [they] owned the . . . property[,] [they] also made many costly improvements to the property including hard wood floors, copper plumbing, crown moldings and other things") [Doc. # 48]; T. Brown Decl. at ¶ 2 (same) [Doc. # 52].[10] Defendant overlooks the fact that Plaintiffs' theory of liability is that *they would not have sold the property at all* had Defendant's representatives permitted Plaintiffs to exercise their right to reinstatement under California Civil Code section 2924c. *See* D. Brown Decl. at ¶ 34 ("By May[] 2012, we gave up in frustration, moved out, and agreed to a short-sale of the property.") [Doc. # 48]. Thus, Plaintiffs have advanced sufficient evidence that Defendant's conduct caused them to lose the value of at least their down payment and improvements, if not the fair market value of the property. *See* Pls.' Genuine Disps. of Mat. Facts at ¶ 9 [Doc. # 53].

---

[10] Defendant objects to Plaintiffs' attestations that they made these improvements to the property on the grounds that they "[l]ack[] foundation/authenticity[.]" *See* Def.'s Objs. at 2, 4 [Doc. # 61]. The Court **OVERRULES** these objections because Plaintiffs certainly would have personal knowledge of the improvements *they* made, and their declarations do not purport to identify any physical evidence requiring authentication. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Fed. R. Evid. 901 (discussing the evidentiary standards for identifying and/or authenticating physical evidence).

Defendant similarly argues that Plaintiffs are not entitled to any restitutionary relief under the UCL because "there is no evidence of any money paid by Plaintiffs to [Defendant] that would entitle them to restitution." *See* Reply at 11; *see also Kwikset*, 51 Cal. 4th at 336 (emphasis in original) (quoting Cal. Bus. & Prof. Code § 17203) ("Restitution under [the UCL] is confined to restoration of any interest in 'money or property, real or personal, which may have been *acquired by* means of such unfair competition.'"). Defendant ignores the fact that it received the proceeds of the short sale of *Plaintiffs'* property. *See* Pls.' Genuine Disps. of Mat. Facts at ¶ 15 (noting that it is undisputed that Defendant "agreed to accept the reduced amount of $360,708.00 in full satisfaction of Plaintiffs' mortgage obligation") [Doc. # 53]. Although the parties have not discussed the *precise amount* of the appropriate restitutionary relief to which Plaintiffs may be entitled, there can be no reasonable dispute that Defendant did receive property from Plaintiffs as a result of Defendant's alleged failure to allow them to reinstate their loan.

**C.   Whether Plaintiffs Waived Their Right to Recover for Defendant's Alleged Violation of Their Right to Reinstatement**

Defendant argues that Plaintiffs waived their right to reinstatement by agreeing to the short sale of their property and accepting the benefits of that arrangement, including the $3,000 in relocation assistance, the extinguishment of their loan obligations to Defendant, and avoiding having a foreclosure sale reported on their credit. *See* MSJ at 19–21. Defendant neglects the fact that "[t]he waiver of an important right must be a *voluntary* and knowing act done with sufficient awareness of the relevant circumstances and likely consequences." *Cty. of Riverside v. Superior Court of Riverside Cty.*, 27 Cal. 4th 793, 806 (2002) (emphasis added and deleted) (quoting *Roberts v. Superior Court of Butte Cty.*, 9 Cal. 3d 330, 343 (1973)) (internal quotation marks omitted); *see also* Cal. Civ. Code § 1542 ("[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor . . . ."). Plaintiffs have provided evidence that they consented to the short sale only because Defendant's representatives refused to

-10-

1    allow them to reinstate their loan.  *See, e.g.*, D. Brown Decl. at ¶ 34 ("By May[] 2012, we

2    gave up in frustration, moved out, and agreed to a short-sale of the property.") [Doc. #

3    48].  Moreover, nothing in the record indicates that Plaintiffs signed a written release of

4    either known claims or unknown claims under Civil Code section 1542.  Therefore,

5    Defendant fails to show by "clear and convincing evidence" that Plaintiffs waived their

6    rights under California Civil Code section 2924c.  *See DRG/Beverly Hills, Ltd. v.*

7    *Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 60 (1994) (quoting *City*

8    *of Ukiah v. Fones*, 64 Cal. 2d 104, 107–08 (1966)).

9    **D.    Whether Plaintiffs Fail to Advance Sufficient Evidence to Prove a Violation of**

10   **Cal. Civ. Code § 2924c**

11        Defendant claims that it has submitted two audio recordings of telephone calls that

12   its representatives had with Plaintiff Dona Brown "[o]n or about" February 4, 2012 and

13   February 6, 2012, which demonstrate that she did not attempt to reinstate the loan on

14   those dates.  *See* McNeal Decl. at ¶ 9 [Doc. # 43-1];[11] Reeves Decl., Exs. 13–14

15   (transcripts of the recordings) [Doc. # 43-2];[12] MSJ at 23–24.  Instead, these recordings

---

[11] Plaintiffs object to Vice President Brandon McNeal's attestation that these are recordings of telephone calls that occurred "on or about" February 4, 2012 and February 6, 2012.  *See* Pls.' Evid. Objs. to McNeal Decl. at 3–4 [Doc. # 54].  Specifically, they claim that this aspect of his declaration constitutes hearsay, improper expert testimony, and an improper legal opinion, and that it fails to adequately authenticate the recordings.  *See id.*  The hearsay objection is **OVERRULED** because McNeal attests that Defendant's *system* saved these recordings.  *See* McNeal Decl. at ¶ 9 [Doc. # 43-1]; Fed. R. Evid. 801(b) (emphasis added) (defining a declarant as "the *person* who made the statement").  The improper expert testimony and improper legal opinion objections are **OVERRULED** because McNeal's attestation is based upon his "familiarity with [Defendant's] customs, practices and protocols, as well as the business records generated and maintained by [Defendant.]"  *See* McNeal Decl. at ¶ 3 [Doc. # 43-1]; Fed. R. Evid. 701 (governing opinions rationally based on perception).  Lastly, because the foundation provided in McNeal's attestation is "sufficient to support a finding" that these recordings are of telephone calls that occurred "on or about" February 4, 2012 and February 6, 2012, the Court **OVERRULES** the inadequate authentication objection.  *See* Fed. R. Evid. 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").  Nonetheless, the Court observes that McNeal's failure to identify the precise date(s) and time(s) of the underlying telephone calls can affect the weight of this evidence.

[12] Plaintiffs object on the grounds of "[v]ague[ness] & hearsay" to Attorney Dean Reeves's attestation that his office received from Defendant copies of the telephone recordings.  *See* Pls.' Evid.

indicate that Dona and Peterson discussed documents that she had submitted to Defendant to support her application for a loan modification. *See* Reeves Decl. Exs. 13–14 (transcripts of the recordings) [Doc. # 43-2]. Further, Defendant claims that the "System Notes" that Defendant's representatives included in the file for Plaintiffs' loan do not indicate that Dona asked Larsen on February 16, 2012 or on March 15, 2012 whether she could reinstate Plaintiffs' loan.[13] *See* MSJ at 24; McNeal Decl. at ¶¶ 6, 13 [Doc. # 43-1]; McNeal Decl., Ex. 6 at 51–71 (Systems Notes) [Doc. # 43-1]. Defendant claims that this omission from the System Notes is significant because "[n]otes from contact, or attempted contact, with the borrower are maintained by [Defendant] in the regular course of business, and are entered in the System Notes at or near the time of the contact or the attempted contact with the borrower." *See* McNeal Decl. at ¶ 6 [Doc. # 43-1].[14]

Defendant's evidence does not negate the existence of a triable issue of fact regarding whether Defendant's representatives interfered with Plaintiff Dona Brown's attempts to reinstate the loan. Given that Plaintiffs had a loan modification application pending at the time of the relevant calls, a reasonable factfinder could conclude that Defendant's two recordings pertain to telephone calls *other than* the February 4, 2012 and February 6, 2012 calls Plaintiffs rely upon in support of their claim, especially considering that these recordings were made "on or about" those two dates and that

---

Objs. to Reeves Decl. at 2 [Doc. # 55]. The Court **OVERRULES** these objections because Reeves was not referring to any out-of-court statement and his declaration identifies these recordings using the same filenames that McNeal utilizes in his declaration. *See* Reeves Decl. at ¶¶ 4–5 [Doc. # 43-2]; McNeal Decl. at ¶ 9 [Doc. # 43-1].

[13] As mentioned *supra* note 4, Plaintiffs apparently allege that the final call occurred on May 15, 2012 instead of on March 15, 2012.

[14] Plaintiffs object to this portion of McNeal's declaration on hearsay grounds. *See* Pls.' Objs. to McNeal Decl. at 2–3 [Doc. # 54]. The Court **OVERRULES** this objection because McNeal is merely describing a custom and practice with which he claims to be familiar (*i.e.*, those concerning System Notes), and is not recounting any particular out-of-court statement. *See* McNeal Decl. at ¶ 3 [Doc. # 43-1]; Fed. R. Evid. 801(c).

-12-

Defendant records only "some of the calls with its borrowers." *See* McNeal Decl. at ¶ 9 [Doc. # 43-1]. Defendant points out that Dona prepared a chart that purportedly lists the telephone calls she made and received during that time period, and that the chart shows that she had only one call with Peterson on February 4, 2012 and on February 6, 2012. *See* Reply at 15–16; Reeves Decl., Ex. 11 at 122:20–127:24 (portions of D. Brown Depo. in which she discussed the chart) [Doc. # 43-2]; Reeves Decl., Ex. 11 at 70–71 (Ex. 5 to D. Brown Depo., which is the chart) [Doc. # 43-2]. Again, a reasonable factfinder could resolve this discrepancy by noting that the precise dates and times of the recordings are uncertain. Further, even if the omission of other potential telephone calls from the chart weakens Plaintiffs' case, the factfinder should decide how much weight should be afforded to the witnesses' testimony. *See Soremekun*, 509 F.3d at 984 ("In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.").

The same principle applies to Defendant's argument concerning the "System Notes" that it maintains. A reasonable trier-of-fact can decide to credit Dona's and her mother's testimony regarding their February 16, 2012 telephone conversation with Larsen, notwithstanding the omission of any discussion of "reinstatement" from the System Notes he entered on that date. Moreover, although Defendant contends that there are no System Notes for a March 15, 2012 call, *see* MSJ at 24, that fact is unsurprising given that Plaintiffs no longer allege that they had any calls with Defendant's representatives on that date. *See supra* note 4. Plaintiffs also point to evidence of their previous communications with Bridget Kasik, Defendant's agent prior to Peterson regarding loan reinstatement, which lends credence to their claim that Defendant subsequently refused to allow them to reinstate their loan. *See* D. Brown Decl. at ¶¶ 10–15 (describing Dona's communications with Kasik) [Doc. # 48].

-13-

1    In sum, viewing the evidence in the light most favorable to Plaintiffs, the Court

2 finds that genuine disputes of material fact exist regarding whether Defendant violated

3 California Civil Code section 2924c such that a remedy under the UCL is appropriate.[15]

**V.**

**CONCLUSION**

6    In light of the foregoing, the Court **DENIES** Defendant's motion.  Furthermore,

7 given the sole UCL claim that remains, the Court will replace the Court's Scheduling and

8 Case Management Order for Jury Trial with one for a Court Trial.[16]

**IT IS SO ORDERED.**

DATED:  January 12, 2018

_Dolly M. Gee_

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

---

[15] Furthermore, the Court rejects Defendant's argument that the supposed lack of written communications in the record relating to Plaintiffs' requests to reinstate the loan demonstrates that they cannot prove that Defendant violated the statute.  *See* MSJ at 25–26.  Defendant cites no authority requiring such requests to be reduced to writing.  *See id.*; *see also* Cal. Civ. Code § 2924c (failing to specify any form that a request for reinstatement must take).  Moreover, Defendant apparently argues that the absence of written communications renders Plaintiffs' account of the facts "simply not credible"—which is precisely the sort of determination that the Court may not make on a motion for summary judgment.  *See* MSJ at 26; *Soremekun*, 509 F.3d at 984.

[16] *See, e.g.*, *Hodge v. Superior Court of L.A. Cty.*, 145 Cal. App. 4th 278, 285 (2006) (agreeing with other courts that have held that "there is no right to a jury trial in a section 17200 lawsuit").